Joseph M. McMullen, Esq. (SBN 246757)
LAW OFFICES OF JOSEPH M. McMULLEN
501 W. Broadway, Suite 1510
San Diego, California  92101
Telephone: (619) 501-2000
Facsimile: (619) 615-2264
E-Mail:  joe@jmm-legal.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.A.M., a minor child; O.A.M., a minor child; and Thelma Medina Navarro, their mother.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA; UNKNOWN CUSTOMS AND BORDER PROTECTION OFFICER 1, UNKNOWN CUSTOMS AND BORDER PROTECTION OFFICER 2, and UNKNOWN CUSTOMS AND BORDER PROTECTION OFFICER 3, in their individual capacities; and DOES 1-10 inclusive,<br><br>Defendants. | Case No. **'22CV0380 GPC DEB**<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>1.  False Imprisonment (FTCA)<br>2.  Intentional Infliction of Emotional Distress (FTCA)<br>3.  Negligence (FTCA)<br>4.  Bane Act – Cal. Civ. Code § 52.1 / Article I, Section 1 of the California Constitution (FTCA)<br>5.  Fourth Amendment Unreasonable Seizure  (*Bivens*)<br>6.  Fifth Amendment Due Process Interference with Parent-Child Relationship (*Bivens*)<br>7.  Fifth Amendment Equal Protection (*Bivens*) |

COMES NOW Plaintiffs, J.A.M., a minor child; O.A.M., a minor child; and THELMA MEDINA NAVARRO, their mother and guardian (collectively "Plaintiffs"), for causes of action against defendants UNITED STATES OF AMERICA ("United

States") and UNKNOWN CUSTOMS AND BORDER PROTECTION OFFICER 1, UNKNOWN CUSTOMS AND BORDER PROTECTION OFFICER 2, UNKNOWN BORDER PROTECTION OFFICER 3, and DOES 1-10, whose true names and identities are currently unknown, and herein alleges, based on information and belief:

## JURISDICTION AND VENUE

1. This Complaint is for damages based on tort violations committed by employees of the United States acting under color of law and within the scope of their employment and in violation of the Federal Tort Claims Act and California law.

2. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1346(b), because Plaintiff's claims arise under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, involving violations of California tort law.

3. Plaintiffs exhausted the administrative remedies prescribed by 28 U.S.C. § 2675 by timely presenting the Federal Tort Claims Act ("FTCA") claims to the appropriate agencies of the United States on March 10, 2021. In letters sent via certified mail on September 29, 2021, United States Customs and Border Protection denied the claims in full.

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(e)(1)(B), because this is the judicial district in which the events and omissions giving rise to the claims occurred.

## PARTIES

5. At the time of the incident, Thelma Medina Navarro ("Mrs. Medina") and her husband lived near the U.S.-Mexico border with their 14-year-old son, O.A.M., and 9-year-old daughter, J.A.M. Mrs. Medina brings this action on behalf of her two minor children, O.A.M. and J.A.M., and on her own behalf.

6. O.A.M. is the minor son of Mrs. Medina and her husband. O.A.M. is a United States Citizen born in San Diego County. O.A.M. was 14 years old at the time of the incident.

7. J.A.M. is the minor daughter of Mrs. Medina and her husband. J.A.M. is a United States Citizen born in San Diego County. J.A.M. was 9 years old at the time of the incident.

8. UNKNOWN CUSTOMS AND BORDER PROTECTION OFFICER 1 ("CBP Officer 1"), whose true name is unknown at this time, is and was at all relevant times employed by Defendant UNITED STATES OF AMERICA as a United States Customs and Border Protection ("CBP") law enforcement officer. At all times described in this Complaint, CBP Officer 1 was acting as a sworn law enforcement or peace officer, agent, servant, or employee of the United States, and under color of legal authority. Plaintiff sues CBP Officer 1 in his individual capacity.

9. UNKNOWN CUSTOMS AND BORDER PROTECTION OFFICER 2 ("CBP Officer 2"), whose true name is unknown at this time, is and was at all relevant times employed by Defendant UNITED STATES OF AMERICA as a United States Customs and Border Protection ("CBP") law enforcement officer. At all times described in this Complaint, CBP Officer 2 was acting as a sworn law enforcement or peace officer, agent, servant, or employee of the United States, and under color of legal authority. Plaintiff sues CBP Officer 2 in his individual capacity.

10. UNKNOWN CUSTOMS AND BORDER PROTECTION OFFICER 3 ("CBP Officer 3"), whose true name is unknown at this time, is and was at all relevant times employed by Defendant UNITED STATES OF AMERICA as a United States Customs and Border Protection ("CBP") law enforcement officer. At all times described in this Complaint, CBP Officer 3 was acting as a sworn law enforcement or peace officer, agent, servant, or employee of the United States, and under color of legal authority. Plaintiff sues CBP Officer 3 in his individual capacity.

11. DOES 1 - 10 ("Doe Defendants" or "the CBP Officers"), whose true names are unknown at this time, are and were at all relevant times employed by Defendant UNITED STATES OF AMERICA as United States Customs and Border Protection ("CBP") law enforcement officers. At all times described in this Complaint, Doe

Defendants were acting as sworn law enforcement or peace officers, agents, servants, or employees of the United States, and under color of legal authority. Plaintiff sues Doe Defendants in their individual capacity.

12. Defendant UNITED STATES OF AMERICA ("United States") is a sovereign nation that has waived its sovereign immunity for the claims that Plaintiff asserts against it. At all relevant times, Defendant United States was the government entity that controlled, directed, and otherwise oversaw United States Customs and Border Protection ("CBP") and employed the law enforcement officers whose true names are unknown but are referred to in this Complaint as CBP OFFICER 1, CBP OFFICER 2, CBP OFFICER 3 and Doe Defendants, each of whom were acting under color of law and within the course and scope of their employment with respect to the conduct about which Plaintiff complains.

**FACTS**

13. Mrs. Medina, her husband, and their two children, 14-year-old O.A.M. and 9-year-old J.A.M., live near the U.S.-Mexico border. Both children are United States Citizens born at hospitals in San Diego County, and both have United States Passports and United States Passport Cards. In 2019, J.A.M. was a 4th-grader at Nicoloff Elementary School in San Diego, and O.A.M. was in his freshmen year at nearby San Ysidro High School. Mrs. Medina, O.A.M. and J.A.M. routinely entered the United States at the San Ysidro Port of Entry ("SYPOE") on their way to school.

14. On Monday, March 18, 2019, Mrs. Medina woke up early to get O.A.M. and J.A.M. ready for school. That morning, Mrs. Medina was scheduled for uterine surgery at a medical clinic in Tijuana, Mexico. Mrs. Medina arranged for her close family friend who her children called, "Aunt Michelle," to take them to school that morning. Aunt Michelle is a U.S. Citizen with two children attending the same elementary and high schools as O.A.M. and J.A.M.. Around 4:30 a.m., Aunt Michelle picked up O.A.M. and J.A.M. along with her children, drove a short distance to the SYPOE, and began waiting to enter the United States in the SYPOE vehicle lanes.

15. Around 7 a.m., after nearly two and a half hours in line, J.A.M., O.A.M., Aunt Michelle and her children, were still waiting, but the vehicular lanes were not progressing. Aunt Michelle called the father of O.A.M. and J.A.M. to pick up the children from the vehicular crossing area and take them to the PedWest (also known as Chaparral) pedestrian crossing. The father of O.A.M. and J.A.M. is a Mexican Citizen without a visa to cross into the United States with his children.

16. O.A.M. and J.A.M. waited to cross the border in the PedWest pedestrian line. They both had their current U.S. Passport Cards and their school identification cards ready to present upon entry. O.A.M. and J.A.M. called Mrs. Medina on O.A.M.'s mobile phone right before they arrived at the primary inspection counters at the front of the pedestrian line. After that call, Mrs. Medina did not hear from her children and became increasingly worried while she is at the medical clinic.

17. When it was O.A.M.'s and J.A.M.'s turn to approach the counter, they each presented their U.S. Passport Cards to the CBP primary inspector and were questioned and pulled aside to secondary inspection. During the secondary inspection, at first they were questioned together, then they were separated and individually questioned. Both children were taken into custody at approximately 7:40 a.m.

18. Over the next two hours, Mrs. Medina and Aunt Michelle repeatedly called O.A.M.'s mobile phone but he did not answer. Aunt Michelle crossed the border around 9:40 a.m. and headed to PedWest. When she arrived, CBP Officers confirmed that O.A.M. and J.A.M. were in custody. Aunt Michelle advised the CBP Officers that she had identification and proof of her U.S. Citizenship, as well as a notarized parental consent letter authorizing her to cross the border with O.A.M. and J.A.M.. The CBP Officers made her wait for two hours without providing her with any updates or additional information.

19. Aunt Michelle contacted Mrs. Medina at the medical clinic and informed her about the children's detention. Mrs. Medina immediately left the clinic while still in the pre-operative stages of her surgery. After collecting further identity documents of O.A.M.

and J.A.M., Mrs. Medina arrived at PedWest around 11 a.m.  Mrs. Medina asked CBP Officers for her children and provided the CBP Officers with their names and dates of birth.  CBP Officers told Mrs. Medina that her children were not in CBP's custody.  Mrs. Medina explained that Aunt Michelle was told by CBP Officers that the children were taken into custody.  CBP Officers once again told Mrs. Medina that her children were not there and that they had not crossed that day at PedWest.  Mrs. Medina then called Aunt Michelle and together they explained to the CBP Officers what Aunt Michelle had been previously told regarding the children being in their custody.  Aunt Michelle identified the CBP Officers that she had talked to.  CBP Officers asked to see more documents regarding the children's identity and then told Mrs. Medina that they would check the surveillance cameras.  Mrs. Medina and Aunt Michelle continued to wait.  CBP Officers blamed Mrs. Medina for losing her children, and told her to leave and that they would contact her in two days.  Mrs. Medina and Aunt Michelle called 911 and were told by the emergency dispatcher that the issue was not within their jurisdiction.

20. Mrs. Medina went back into the CBP building and continued to ask for information about her children.  CBP Officers responded that they had so many people detained that they did not know if her children were in their custody.  They advised Mrs. Medina to go to her house and relax and they would let her know about her children later that evening or the next day.  Mrs. Medina continued to wait.

21. Around 6:40pm, CBP Officer 1 called Aunt Michelle.  He said he knew O.A.M. was born in the U.S., but that J.A.M. is an imposter without legal permission to be in the U.S.  Aunt Michelle told CBP Officer 1 he was wrong and that O.A.M. and J.A.M. were U.S. Citizens who cross regularly.  CBP Officer 1 then told her that he could not provide her information and hung up.

22. CBP Officer 1 then called Mrs. Medina and told her that O.A.M. was her son but the little girl was not her daughter.  CBP Officer 1 said the little girl in CBP's custody "looked Honduran."  CBP Officer 1 did not provide additional information and told Mrs. Medina he would call her back.  Around 8 p.m., over 12 hours after her children were

taken into CBP custody, Mrs. Medina received a call from CBP telling her she could pick up O.A.M.. Mrs. Medina arrived at PedEast with more documents and photographs of her daughter, but she again was told by CBP Officers that the girl in their custody was not her daughter, J.A.M.. Mrs. Medina showed the CBP Officers family pictures and told them to compare the photos to J.A.M.'s passport photos on file. The CBP Officers told her that the girl pictured in the photographs was J.A.M., but that the little girl in their custody was not the same person.

23. CBP Officers released O.A.M. to Mrs. Medina and told her to leave the premises. Mrs. Medina asked the CBP Officers if they were going to give her something in writing to explain the detention of her daughter, but they refused her request and threatened to detain Mrs. Medina if she did not leave. Mrs. Medina went to the Coronado Police Station around 10 p.m. to ask for help finding her daughter, and then went to the Border Patrol station in San Ysidro around 11 p.m. Border Patrol agents suggested she contact the Mexican Consulate. Mrs. Medina called the Mexican Consulate and left a voicemail pleading for help.

24. Mrs. Medina continued her efforts to locate her daughter until around 5 p.m. on Tuesday when she received a call from the Mexican Consulate instructing her where to meet them at the SYPOE. After 33 hours of terror, Mrs. Medina was reunited with her 9-year-old daughter.

25. During O.A.M.'s 12 hours and J.A.M.'s 33 hours of custody, CBP Officer 1 repeatedly interrogated O.A.M. and J.A.M., he isolated them in various detention areas, he forced each child into close quarters with handcuffed adult males, he subjected O.A.M. and J.A.M. to inhumane conditions that were terrifying for a child, and he repeatedly falsely accused O.A.M. and J.A.M. of being involved in sex-trafficking, prostitution, trafficking in organs, and other smuggling activity without any lawful justification

26. During O.A.M.'s 12 hours and J.A.M.'s 33 hours of custody, CBP Officer 2 repeatedly interrogated O.A.M. and J.A.M., he isolated them in various detention areas, he forced each child into close quarters with handcuffed adult males, he subjected O.A.M.

7

and J.A.M. to inhumane conditions that were terrifying for a child, and he repeatedly falsely accused O.A.M. and J.A.M. of being involved in sex-trafficking, prostitution, trafficking in organs, and other smuggling activity without any lawful justification

27. During O.A.M.'s 12 hours and J.A.M.'s 33 hours of custody, CBP Officer 3 repeatedly interrogated O.A.M. and J.A.M., he isolated them in various detention areas, he forced each child into close quarters with handcuffed adult males, he subjected O.A.M. and J.A.M. to inhumane conditions that were terrifying for a child, and he repeatedly falsely accused O.A.M. and J.A.M. of being involved in sex-trafficking, prostitution, trafficking in organs, and other smuggling activity without any lawful justification.

28. During the interrogation of O.A.M., CBP Officer 1, 2, and/or 3 asked O.A.M. how many female cousins he had. He answered that he had three cousins and provided their names and respective ages. CBP Officer 1, 2, and/or 3 then made a statement indicating that J.A.M. was actually Melanie, the cousin closest to J.A.M.'s age. O.A.M. insisted that the girl he was with was actually his sister, J.A.M., and not his cousin. The male CBP officer told O.A.M. that his little sister looked too "developed" to be a 9-year-old. CBP Officer 1, 2, 3 and/or Doe Defendants continued to interrogate O.A.M. about the "true identity" of his sister. He was told by CBP Officer 1, 2, 3 and/or Doe Defendants that if he did not say that the girl was Melanie, that he would be arrested and charged with human and organ trafficking. After several hours of interrogation, intimidation, and threats, CBP Officer 1, 2, 3 and/or Doe Defendants told O.A.M. that if he said that she was Melanie, he would be released immediately. O.A.M. was scared of being arrested and charged with human and organ trafficking, and he finally agreed to say his sister was his cousin. CBP Officer 1, 2, 3 and/or Doe Defendants then coerced O.A.M. into writing out a declaration in which he stated that he went in the morning to pick up his cousin from her house and brought her to the border. After he wrote the statement, he was released to Mrs. Medina.

29. Throughout J.A.M.'s interrogation, CBP Officer 1, CBP Officer 2, and CBP Officer 3 each repeatedly told J.A.M. she was not the girl who was pictured on her U.S.

8

Passport Card. At one point, J.A.M. showed them her school identification card to compare to the passport photo. She also had her school identification card from the previous year. CBP Officer 1, CBP Officer 2, and CBP Officer 3 told J.A.M. she looked different than her photo. CBP Officer 1, CBP Officer 2, and CBP Officer 3 told J.A.M. that if she did not say she was Melanie, her brother was going to be arrested and taken to jail. CBP Officer 1, CBP Officer 2, and CBP Officer 3 explained that her brother would be in jail for many years and it would be her fault. After several hours when O.A.M. told CBP Officer 1, CBP Officer 2, and CBP Officer 3 that J.A.M. was in fact Melanie, CBP Officer 1, CBP Officer 2, and CBP Officer 3 shared the false coerced confession with J.A.M. and added that she was now alone. CBP Officer 1, CBP Officer 2, and CBP Officer 3 kept her in custody for another 24 hours until the following evening.

## The Conditions of J.A.M.'s Unlawful Detention

30. J.A.M. was detained at the SYPOE for approximately thirty-three (33) hours.

31. J.A.M. was not given adequate food or drink during her detention. She was fed only twice during the thirty-three hour period.

32. She was held all night overnight in a cold room at the SYPOE with several other detainees. CBP Officers did not even give her a pillow.

33. Throughout the day and night, J.A.M. asked about her parents and brother, and she often cried.

34. CBP is bound by the Flores v. Reno Settlement Agreement (the "Flores Agreement"), which requires that noncitizen children in CBP's control be provided with food and drinking water and that they be detained in an adequately heated location. Although J.A.M. is a U.S. Citizen, the Flores Agreement constitutes the required standard of care for minors held in immigration-related detention.

35. CBP internal policies, including the Office of Border Protection's "Hold Room and Short Term Custody" policy and the Office of Field Operations' "Secure Detention, Transport and Escort Procedures at Ports of Entry," require that noncitizen children be offered meals every six hours, and that they be given regular snacks and

beverages. A U.S. Citizen child such as J.A.M. and O.A.M. cannot be afforded a lesser standard of care.

36.     In any event, CBP's treatment of J.A.M. violated applicable standards of care because she was not provided with adequate food or water, and was kept in a room overnight that was far too cold.

## DAMAGES

37.     As a direct and proximate result of the aforesaid acts, omissions, and decisions of CBP Officer 1, CBP Officer 2, and CBP Officer 3, and Doe Defendants, Plaintiffs suffered and/or will continue to suffer great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, and apprehension, and damage to their parent-child relationships, which have caused Plaintiffs to sustain damages in a sum to be determined at trial. Mrs. Medina, O.A.M., and J.A.M. each suffered severe emotional distress as a direct and proximate result of the aforesaid acts, omissions, and decisions of CBP Officer 1, CBP Officer 2, and CBP Officer 3, and Doe Defendants. Mrs. Medina cannot help but frequently relive the terror of being separated from her children, at first being told they were lost, and then later learning that her 14-year-old son and her 9-year-old daughter were being subjected to ongoing interrogation and other circumstances akin to torture for over 12 hours and 33 hours, respectively. Mrs. Medina suffers insomnia, paranoia, severe anxiety and ongoing psychological trauma as a direct and proximate result of the aforesaid acts, omissions, and decisions of CBP Officer 1, CBP Officer 2, and CBP Officer 3, and Doe Defendants. O.A.M. suffered and continues to suffer psychological trauma, insomnia, paranoia, debilitating anxiety, and severe emotional distress as a direct and proximate result of the aforesaid acts, omissions, and decisions of CBP Officer 1, CBP Officer 2, and CBP Officer 3, and Doe Defendants. J.A.M. suffered and continues to suffer psychological trauma, insomnia, night terrors, paranoia, debilitating anxiety, and severe emotional distress as a direct and proximate result of the aforesaid acts, omissions, and decisions of CBP Officer 1, CBP Officer 2, and CBP Officer 3, and Doe Defendants.

# FIRST CAUSE OF ACTION

## False Imprisonment (FTCA)

### (against Defendant United States of America)

38.  Plaintiffs repeat and re-alleges each allegation contained in paragraphs 1 through 37 of this Complaint.

39.  At all times relevant to this action, CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants were federal employees acting in their official capacity within the scope of their employment as law enforcement officers for CBP, an agency of Defendant United States.

40.  The actions of Defendant United States, by and through CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants, were a substantial factor in causing harm to Plaintiffs, and each suffered damages in an amount to be proven at trial.

41.  By the acts alleged above, Defendant United States, by and through CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants, willfully detained O.A.M. for 12 hours and J.A.M. for 33 hours without consent and without authority of law or legal justification, thereby causing Plaintiffs to suffer damages as set forth above, for which Plaintiffs are entitled to monetary relief pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*

# SECOND CAUSE OF ACTION

## Intentional Infliction of Emotional Distress (FTCA)

### (against Defendant United States of America)

42.  Plaintiffs repeats and re-alleges each allegation contained in paragraphs 1 through 41 of this Complaint.

43.  By the acts alleged above, Defendant United States, by and through CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants, engaged in extreme and outrageous conduct that transcended the bounds of human decency.

44.  Defendant United States, by and through CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants, intended to cause, and did cause, Plaintiffs to experience

severe emotional distress and each acted with a reckless disregard of the probability that Plaintiffs would suffer severe emotional distress.

45. CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants acted in their official capacity and in the scope of their employment as CBP Officers of Defendant United States.

46. Plaintiffs suffered severe emotional distress, and the conduct of Defendant United States, by and through CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants, was a substantial factor in causing Plaintiffs' severe emotional distress, for which Plaintiffs are entitled to monetary relief pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*

## THIRD CAUSE OF ACTION

### Negligence (FTCA)

### (against Defendant United States of America)

47. Plaintiffs repeat and re-alleges each allegation contained in paragraphs 1 through 46 of this Complaint.

48. Defendant United States, by and through CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants, had a duty to use reasonable care in interacting with a citizen, had a duty to use reasonable care in performing a search, had a duty to use reasonable care in performing a detention, and had a duty to refrain from using any force that was not objectively reasonable under the totality of the circumstances. Defendant United States, by and through its employees, had a duty to avoid needlessly and negligently subjecting Plaintiffs to severe emotional distress.

49. Defendant United States, by and through CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants, breached all these duties by the conduct alleged above in paragraphs 1 through 30 of this Complaint.

50. At all times relevant to this action, CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants were federal employees acting in their official capacity within the scope of their employment as law enforcement officers for CBP, an agency of

Defendant United States.

51. The actions of Defendant United States, by and through CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants, were a substantial factor in causing harm to Plaintiffs, and each suffered damages in an amount to be proven at trial.

52. By the acts alleged above, Defendant United States, by and through CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants, was negligent and breached its duty of due care owed to Plaintiffs, thereby causing Plaintiffs to suffer harm as set forth above, for which Plaintiffs are entitled to monetary relief pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*

## FOURTH CAUSE OF ACTION

**Bane Act – California Civil Code § 52.1 / Article I, Section 1 of the California Constitution (FTCA)**

**(against Defendant United States of America)**

53. Plaintiffs repeats and re-alleges each allegation contained in paragraphs 1 through 52 of this Complaint.

54. Defendant United States, by and through the conduct of CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants, repeatedly and intentionally interfered by threats, intimidation, and coercion, and attempted to interfere by threats, intimidation, and coercion, with the exercise and enjoyment of Plaintiffs rights as secured by Article I, Section 1 of the California Constitution, with the parent-child relationship of Mrs. Medina and her 14-year-old son, O.A.M., and of Mrs. Medina and her 9-year-old daughter, J.A.M., without any lawful justification, by separating and isolating the children for 12 hours and 33 hours, respectively, because CBP Officers thought J.A.M., a United States Citizen, "looked Honduran."

55. Defendant United States, by and through the conduct of CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants as described above, intended to deprive Plaintiffs of their enjoyment of the rights and interests protected by the California Constitution.

56. CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants, and thereby Defendant United States, acted in their official capacity and in the scope of their employment as CBP officers of Defendant United States.

57. The actions of CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants, and thereby the actions of Defendant United States, were a substantial factor in causing harm to Plaintiffs as set forth above, and they suffered damages for which Plaintiffs are entitled to monetary relief pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*

## FIFTH CAUSE OF ACTION

### Fourth Amendment Unreasonable Seizure (*Bivens*)

### (against Defendants CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants 1-10)

58. Plaintiffs repeat and re-allege each allegation contained in paragraphs 1 through 57 of this Complaint.

59. As a result of the acts alleged above by CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants, the arrest, detention, unnecessary and extended restraint, incarceration and interrogation of O.A.M. and J.A.M. constituted unreasonable seizures in violation of the Fourth Amendment to the U.S. Constitution.

60. As a proximate result of the acts alleged above, Plaintiffs sustained the damages alleged above. Plaintiffs are therefore entitled to general and compensatory damages in an amount to be proven at trial.

61. In committing the acts alleged above, CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights and safety of Plaintiffs, and by reason thereof Plaintiffs are entitled to punitive damages in an amount to be proven at trial.

62. The above acts by CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants had no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair,

arbitrary and oppressive, and are unjustifiable as a means of conducting any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order.

## SIXTH CAUSE OF ACTION

**Fifth Amendment Due Process Violation – Interference with Parent-Child Relationship (*Bivens*)**

**(against Defendants CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants 1-10)**

63. Plaintiffs repeat and re-allege each allegation contained in paragraphs 1 through 62 of this Complaint.

64. As a result of the acts alleged above by CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants, the unnecessary and extended detention and separation of O.A.M. and J.A.M. from Mrs. Medina violated Plaintiffs' Due Process rights to family integrity and family association under the Fifth Amendment to the U.S. Constitution.

65. As a proximate result of the acts alleged above, Plaintiffs sustained the damages alleged above. Plaintiffs are therefore entitled to general and compensatory damages in an amount to be proven at trial.

66. In committing the acts alleged above, CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the constitutional rights of Plaintiffs, and by reason thereof Plaintiffs are entitled to punitive damages in an amount to be proven at trial.

67. The above acts by CBP Officer 1, CBP Officer 2, CBP Officer 3, and Doe Defendants had no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive, and are unjustifiable as a means of conducting any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order.

## SEVENTH CAUSE OF ACTION

## Fifth Amendment Equal Protection (*Bivens*)

## (against Defendants CBP Officer 1)

68. Plaintiffs repeat and re-allege each allegation contained in paragraphs 1 through 67 of this Complaint.

69. As a result of the acts alleged above by CBP Officer 1, including the unjustified and prolonged detention of a 9-year-old United States citizen of Hispanic ethnicity based on discriminatory animus because according to CBP Officer 1 she "looked Honduran," CBP Officer 1 violated Plaintiffs' Equal Protection rights under the Fifth Amendment of the United States Constitution.

70. As a proximate result of the acts alleged above, Plaintiffs sustained the damages alleged above. Plaintiffs are therefore entitled to general and compensatory damages in an amount to be proven at trial.

71. In committing the acts alleged above, CBP Officer 1 acted maliciously and/or were guilty of a wanton and reckless disregard for the constitutional rights of Plaintiffs, and by reason thereof Plaintiffs are entitled to punitive damages in an amount to be proven at trial.

72. The above acts by CBP Officer 1 had no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive, and are unjustifiable as a means of conducting any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter a judgment including:

    a. General damages, special damages, and compensatory damages in an amount according to proof;

    b. Punitive damages according to proof against the individual defendants only;

    c.    Civil penalties as provided by law;

    d.    Attorneys' fees and other allowable costs of suit under California Civ. Code § 52.1;

    e.    Legal interest on all damages awards from the date of judicial demand until paid;

    f.    And for such other and further relief as the Court may deem proper.

Respectfully submitted,

Dated:  March 21, 2022          */s/ Joseph M. McMullen*
                                       JOSEPH M. McMULLEN
                                       Attorney for Plaintiffs

## DEMAND FOR JURY TRIAL & BENCH TRIAL

Plaintiffs respectfully demand a Jury Trial in this Court as to the *Bivens* causes of action against the individual defendants and a bench trial in this Court as to each FTCA cause of action against Defendant United States of America.

Respectfully submitted,

Dated:  March 21, 2022          */s/ Joseph M. McMullen*
                                       JOSEPH M. McMULLEN
                                       Attorney for Plaintiff