Joseph M. McMullen, Esq. (SBN 246757)
Law Offices of Joseph M. McMullen
501 W. Broadway, Suite 1510
San Diego, California 92101
Telephone: (619) 501-2000
Facsimile: (619) 615-2264
E-Mail: joe@jmm-legal.com

Attorney for Plaintiffs J.AM., O.A.M.,
and Thelmo Medina Navarro

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.A.M., a minor child; O.A.M., a minor child; and THELMA MEDINA NAVARRO, their mother<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No. 22-CV-0380-GPC-DEB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION PURSUANT TO FED. R. CIV. P. 56(d) FOR AN ORDER DEFERRING CONSIDERATION OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO ALLOW TIME TO TAKE DISCOVERY** |

**I.     INTRODUCTION AND STATEMENT OF RELEVANT FACTS**

This lawsuit alleges CBP Officers wrongfully detained, accused and coerced two U.S. citizen children of Mexican descent into making false statements that led to their prolonged harrowing detention.

**A.     The Incident**[1]

Plaintiff Thelma Medina Navarro ("Mrs. Medina"), her husband, and their two

---

[1] All of the facts set forth in subsection I.A. are alleged in the Complaint (ECF No. 1) at ¶¶ 5 through 30.

1

children, 14-year-old O.A.M. and 9-year-old J.A.M., live near the U.S.-Mexico border. Both children are United States Citizens born at hospitals in San Diego County. In 2019, J.A.M. was a 4th-grader at Nicoloff Elementary School in San Diego, and O.A.M. was in his freshmen year at nearby San Ysidro High School. Mrs. Medina, O.A.M. and J.A.M. routinely entered the United States at the San Ysidro Port of Entry ("SYPOE") on their way to school.

On Monday, March 18, 2019, Mrs. Medina was scheduled for uterine surgery at a medical clinic in Tijuana, so she arranged for her close family friend who her children called, "Aunt Michelle," to take them to school that morning. Aunt Michelle is a U.S. Citizen with two children attending the same elementary and high schools as O.A.M. and J.A.M.. Around 4:30 a.m., Aunt Michelle picked up O.A.M. and J.A.M. along with her children, drove a short distance to the SYPOE, and began waiting to enter the United States in the SYPOE vehicle lanes.

Around 7 a.m., after nearly two and a half hours in line, J.A.M., O.A.M., Aunt Michelle and her children, were still waiting, but the vehicular lanes were not progressing. Aunt Michelle called the father of O.A.M. and J.A.M. to pick up the children from the vehicular crossing area and take them to the PedWest (also known as Chaparral) pedestrian crossing. The father of O.A.M. and J.A.M. is a Mexican Citizen without a visa to cross into the United States with his children.

O.A.M. and J.A.M. waited to cross the border in the PedWest pedestrian line. They both had their current U.S. Passport Cards and their school identification cards ready to present upon entry. O.A.M. and J.A.M. called Mrs. Medina on O.A.M.'s mobile phone right before they arrived at the primary inspection counters at the front of the pedestrian line. After that call, Mrs. Medina did not hear from her children and became increasingly worried while she is at the medical clinic.

When it was O.A.M.'s and J.A.M.'s turn to approach the counter, they each presented their U.S. Passport Cards to the CBP primary inspector and were questioned and pulled aside to secondary inspection. During the secondary inspection, at first they

were questioned together, then they were separated and individually questioned. Both children were taken into custody at approximately 7:40 a.m.

Over the next two hours, Mrs. Medina and Aunt Michelle repeatedly called O.A.M.'s mobile phone but he did not answer. Aunt Michelle crossed the border around 9:40 a.m. and headed to PedWest. When she arrived, CBP Officers confirmed that O.A.M. and J.A.M. were in custody. Aunt Michelle advised the CBP Officers that she had identification and proof of her U.S. Citizenship, as well as a notarized parental consent letter authorizing her to cross the border with O.A.M. and J.A.M.. The CBP Officers made her wait for two hours without providing her with any updates or additional information.

Aunt Michelle contacted Mrs. Medina at the medical clinic and informed her about the children's detention. Mrs. Medina immediately left the clinic while still in the pre-operative stages of her surgery. After collecting further identity documents of O.A.M. and J.A.M., Mrs. Medina arrived at PedWest around 11 a.m. Mrs. Medina asked CBP Officers for her children and provided the CBP Officers with their names and dates of birth. CBP Officers told Mrs. Medina that her children were not in CBP's custody. Mrs. Medina explained that Aunt Michelle was told by CBP Officers that the children were taken into custody. CBP Officers once again told Mrs. Medina that her children were not there and that they had not crossed that day at PedWest. Mrs. Medina then called Aunt Michelle and together they explained to the CBP Officers what Aunt Michelle had been previously told regarding the children being in their custody. CBP Officers asked to see more documents regarding the children's identity and then told Mrs. Medina that they would check the surveillance cameras. Mrs. Medina and Aunt Michelle continued to wait. CBP Officers blamed Mrs. Medina for losing her children, and told her to leave. Mrs. Medina and Aunt Michelle called 911 and were told by the emergency dispatcher that the issue was not within their jurisdiction.

Mrs. Medina went back into the CBP building and continued to ask for information about her children. CBP Officers responded that they had so many people detained that

they did not know if her children were in their custody. They advised Mrs. Medina to go to her house and relax and they would let her know about her children later that evening or the next day. Mrs. Medina continued to wait.

Around 6:40pm, a CBP officer called Aunt Michelle. He said he knew O.A.M. was born in the U.S., but that J.A.M. is an imposter without legal permission to be in the U.S. Aunt Michelle told the CBP officer he was wrong and that O.A.M. and J.A.M. were U.S. Citizens who cross regularly. The CBP officer then told her that he could not provide her information and hung up.

The CBP officer then called Mrs. Medina and told her that O.A.M. was her son but the little girl was not her daughter. The CBP officer said the little girl in CBP's custody "looked Honduran." He did not provide additional information and told Mrs. Medina he would call her back. Around 8 p.m., over 12 hours after her children were taken into CBP custody, Mrs. Medina received a call from CBP telling her she could pick up O.A.M.. Mrs. Medina arrived at PedEast with more documents and photographs of her daughter, but she again was told by CBP officers that the girl in their custody was not her daughter. Mrs. Medina showed the CBP officers family pictures and told them to compare the photos to J.A.M.'s passport photos on file. The CBP Officers told her that the girl pictured in the photographs was J.A.M., but that the little girl in their custody was not the same person.

CBP Officers released O.A.M. to Mrs. Medina and told her to leave the premises. Mrs. Medina asked the CBP officers if they were going to give her something in writing to explain the detention of her daughter, but they refused her request and threatened to detain Mrs. Medina if she did not leave. Mrs. Medina went to the Coronado Police Station around 10 p.m. to ask for help finding her daughter, and then went to the Border Patrol station in San Ysidro around 11 p.m. Border Patrol agents suggested she contact the Mexican Consulate. Mrs. Medina called the Mexican Consulate and left a voicemail pleading for help.

Mrs. Medina continued her efforts to locate her daughter until around 5 p.m. on

Tuesday when she received a call from the Mexican Consulate instructing her where to meet them at the SYPOE. After 33 hours of terror, Mrs. Medina was reunited with her 9-year-old daughter.

During O.A.M.'s 12 hours and J.A.M.'s 33 hours of custody, CBP officers repeatedly interrogated O.A.M. and J.A.M., isolated them in various detention areas, forced each child into close quarters with handcuffed adult males, subjected O.A.M. and J.A.M. to inhumane conditions that were terrifying for a child, and repeatedly falsely accused O.A.M. and J.A.M. of being involved in sex-trafficking, prostitution, trafficking in organs, and other smuggling activity without any lawful justification

During the interrogation of O.A.M., CBP officers asked O.A.M. how many female cousins he had. He answered that he had three cousins and provided their names and respective ages. CBP Officers then made a statement indicating that J.A.M. was actually Melanie, the cousin closest to J.A.M.'s age. O.A.M. insisted that the girl he was with was actually his sister, J.A.M., and not his cousin. A male CBP officer told O.A.M. that his little sister looked too "developed" to be a 9-year-old. CBP officers continued to interrogate O.A.M. about the "true identity" of his sister. He was told that if he did not say that the girl was Melanie, that he would be arrested and charged with human and organ trafficking.

CBP officers told O.A.M. that if he said J.A.M. was Melanie, he would be released immediately. O.A.M. was scared of being arrested and charged with human and organ trafficking, and he finally agreed to say his sister was his cousin. CBP officers coerced O.A.M. into writing out a declaration in which he stated that he went in the morning to pick up his cousin from her house and brought her to the border. After he wrote the statement, he was released to Mrs. Medina.

Throughout J.A.M.'s interrogation, CBP officers repeatedly told J.A.M. she was not the girl who was pictured on her U.S. Passport Card. At one point, J.A.M. showed them her school identification card to compare to the passport photo. She also had her school identification card from the previous year. CBP officers told J.A.M. she looked

different than her photo. They told J.A.M. that if she did not say she was Melanie, her brother was going to be arrested and taken to jail. CBP officers explained that her brother would be in jail for many years and it would be her fault. Eventually, the CBP officers shared O.A.M.'s false coerced confession with J.A.M. and added that she was now alone. The CBP officers kept her in custody for another 24 hours until the following evening. After a total of approximately thirty-three hours, she was finally released to her mother, Mrs. Medina.

**B.    The Proceedings**

On March 21, 2022, Plaintiffs filed a Complaint alleging Federal Tort Claims Act and constitutional violations based on CBP officers wrongfully detaining, accusing and coercing two U.S. citizen children of Mexican descent into making false statements that led to their prolonged harrowing detention, as set forth above. (ECF No. 1).

On May 24, 2022, Defendant filed a responsive pleading styled as a "Motion to Dismiss or for Summary Judgment (Fed R. Civ. P. 12(b)(1), 12(b)(6), 56(a)." (ECF No. 4) ("MSJ").  In addition to several unsworn exhibits, the MSJ included two sworn declarations. The half-page declaration of CBP Officer Willmy Lara states in pertinent part that he was the secondary inspection officer who questioned O.A.M. and J.A.M. together and separately and that "they both stated that the female was not the male's sister, but was in fact his cousin." (ECF 4-2 at ¶ 4). The half-page declaration of Supervisory CBP Officer Anthony Ascher states, in pertinent part, that the report of another CBP officer accurately states that on March 18, 2019 Mrs. Medina "arrived at the port of entry, asserting that both minors were her children," but "both [children] stated that she was the aunt of the female minor." (ECF 4-3 at ¶ 3).

On the weight of those two half-page sworn declarations, without affording Plaintiffs the opportunity to conduct *any* discovery, Defendant's MSJ urges the Court to reject as "both implausible and demonstrably false" Plaintiffs' allegations that CBP officers coerced O.A.M. and J.A.M. to falsely state 9-year-old U.S.-citizen J.A.M. was really her undocumented older cousin. (MSJ, ECF No. 4 at 18).

Because the MSJ is the first and only responsive pleading that Defendant has filed in this case, there has not yet been a Rule 26(f) conference, an ENE, a CMC, the exchange of any initial disclosures, or the opportunity by Plaintiffs to engage in any discovery.

Only Defendant has access to the evidence revealing all the facts and circumstances of what occurred during the interrogation of 14-year-old O.A.M. and of 9-year-old J.A.M. That evidence includes the forthcoming deposition testimony of each CBP employee who participated in the questioning of O.A.M. or J.A.M. on March 18-19, 2019 at the SYPOE, and the corresponding audio and video recordings of O.A.M. and J.A.M. at the SYPOE.[2]

To date, Plaintiffs have received no discovery from Defendant other than the attachments set forth in Defendant's MSJ.

## II.  ARGUMENT

### A.  Legal Standard

Under Rule 56(d), if the nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).  In order to prevail under Rule 56(d), the party opposing summary judgment must make "'(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists.'" *Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox*, 353 F.3d 1125, 1129 (9th Cir. 2004) (quoting *VISA Int'l Serv. Ass'n v. Bankcard Holders*

---

[2] According to the Department of Homeland Security's Office for Civil Rights & Civil Liberties (CRCL) Complaint Closure Without Recommendations report submitted by Defendant as an unsworn exhibit to the MSJ (ECF No. 4-1 at 20), DHS received a detailed complaint only two weeks after the incident from the American Friends Service Committee on behalf of Mrs. Medina.  CRCL opened an investigation and sent a request for records from CBP on May 7, 2019, which included among other things "transcripts from interviews with the two children." (ECF No. 4-1 at 20).  As Plaintiffs' counsel is unaware of CBP staffing court reporters at the SYPOE, on information and belief those transcripts were generated from audio or audiovisual recordings of the children.

*of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986)).  The Ninth Circuit has held a Rule 56(d) continuance "should be granted almost as a matter of course unless the nonmoving party has not diligently pursued discovery of the evidence." *Burlington N. Santa Fe R.R. Co. v. The Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773-74 (9th Cir. 2003).  "Where… a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56[(d)] motion fairly freely." *Id.* at 773.

**B.     This Timely Application Specifically Identifies Relevant Information in the Possession of Defendant**

By way of the concurrently filed declaration of counsel, Plaintiffs hereby make a timely application specifically identifying relevant information in the possession of Defendant. *See Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox*, 353 F.3d 1125, 1129 (9th Cir. 2004).  As set forth above, only Defendant has access to the evidence revealing all the facts and circumstances of what occurred during the interrogation of 14-year-old O.A.M. and of 9-year-old J.A.M.  That evidence includes the forthcoming deposition testimony of each CBP employee who participated in the questioning of O.A.M. or J.A.M. on March 18-19, 2019 at the SYPOE, and the corresponding audio and video recordings of O.A.M. and J.A.M. at the SYPOE.[3]

Without an opportunity to obtain this information in discovery, Plaintiffs are unable to present the facts and circumstances of the interrogations of O.A.M. and J.A.M. resulting in their coerced false confessions to 9-year-old U.S. citizen J.A.M. being an undocumented imposter.  These facts and circumstances are essential to Plaintiffs' opposition to the MSJ, which urges the Court to find Plaintiffs' allegations about coerced false confessions to be "both implausible and demonstrably false."

**C.     Plaintiffs Have Had No Opportunity to Conduct Any Discovery**

In the absence of "any realistic opportunity to pursue discovery relating to

---

[3] See footnote 2, *supra*.

[Plaintiffs'] theory of the case, [the Court] should grant any Rule 56[(d)] motion fairly freely." *Burlington N. Santa Fe R.R. Co. v. The Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773-74 (9th Cir. 2003). At this stage, the parties have not engaged in any discovery, as the ENE, the CMC, the Rule 26(f) conference, and the parties exchange of initial disclosures have yet to occur. Accordingly, the Rule 56(d) application should be granted.

### III.  CONCLUSION

To date in this litigation, Plaintiffs have had *no opportunity* to conduct any discovery of any sort. Accordingly, pursuant to Rule 56(d), the Court should defer consideration of Defendants' Motion for Summary Judgment until Plaintiffs have had a reasonable opportunity to conduct discovery, and at this early stage deny the MSJ as PREMATURE.

Respectfully submitted,

Dated:  June 15, 2022

*/s/ Joseph M. McMullen*
Joseph M. McMullen
Attorney for Plaintiffs