Joseph M. McMullen, Esq. (SBN 246757)
Law Offices of Joseph M. McMullen
501 W. Broadway, Suite 1510
San Diego, California 92101
Telephone: (619) 501-2000
Facsimile: (619) 615-2264
E-Mail: joe@jmm-legal.com

Attorney for Plaintiffs J.AM., O.A.M.,
and Thelmo Medina Navarro

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.A.M., a minor child; O.A.M., a minor child; and THELMA MEDINA NAVARRO, their mother<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No. 22-CV-0380-GPC-DEB<br><br>**DECLARATION OF JOSEPH M. MCMULLEN IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT UNITED STATES' MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) [ECF No. 4]** |

I, Joseph M. McMullen, declare that I am an attorney duly licensed to practice before State and Federal courts located in the State of California, including this Court. I am counsel of record for Plaintiffs J.A.M., O.A.M., and Thelma Medina Navarro ("Mrs. Medina") (collectively "Plaintiffs") in this action. Except for matters attested to on information and belief, I have firsthand knowledge of the facts set forth below.

1. Only Defendant has access to the evidence revealing all the facts and circumstances of what occurred during the interrogation of 14-year-old O.A.M. and of 9-year-old J.A.M. That evidence includes the forthcoming deposition testimony of each CBP employee who participated in the questioning of O.A.M. or J.A.M. on March 18-19,

1

2019 at the SYPOE, and the corresponding audio and video recordings of O.A.M. and J.A.M. at the SYPOE.

2. According to the Department of Homeland Security's Office for Civil Rights & Civil Liberties (CRCL) Complaint Closure Without Recommendations report submitted by Defendant as an unsworn exhibit to the MSJ (ECF No. 4-1 at 20), DHS received a detailed complaint only two weeks after the incident from the American Friends Service Committee on behalf of Mrs. Medina. CRCL opened an investigation and sent a request for records from CBP on May 7, 2019, which included among other things "transcripts from interviews with the two children." (ECF No. 4-1 at 20). As I am unaware of CBP staffing court reporters at the SYPOE, on information and belief those transcripts were generated from audio or audiovisual recordings of the interrogations of O.A.M. and J.A.M. during the incident.

3. To date, Plaintiffs have received no discovery from Defendant other than the attachments set forth in Defendant's Motion to Dismiss (ECF No. 4).

4. Although I have been unable to review the government's transcripts and/or recordings of the interrogations of O.A.M. and J.A.M., I have conducted investigation into the facts of those interrogations and of the incident, including conducting interviews of Plaintiffs O.A.M., J.A.M., and Mrs. Medina, reviewing the reports and affidavits attached to Defendant's Motion to Dismiss, reviewing evidence including Plaintiffs' U.S. Passport Cards, U.S. passport photos, and school identification documents, and reviewing contemporaneous video evidence of Plaintiffs that captured details of the incident and aired in the press. For example, I have reviewed the Telemundo video footage of Plaintiffs taken the second day of the incident which depicts J.A.M. immediately upon release by CBP to Mrs. Medina and O.A.M. This is the same J.A.M. who DHS confirmed is a United States Citizen. This video footage, although containing Spanish narration and interview clips which I am competent to understand, corroborates the identities of Plaintiffs and some of the circumstances of their interrogation, detention and family separation. Accordingly, it filed as an exhibit in a separate Notice of Lodgment.

5. Based on my investigation described above, I am competent to testify on information and belief the following facts set forth below in paragraphs ¶¶ 6 through 15 of this Declaration.

6. In March 2019, 14-year old O.A.M. and his little sister, 9-year-old J.A.M., were United States citizens by birth who routinely crossed the U.S.-Mexico border to attend their high school and elementary school in San Diego County. On Monday, March 18, 2019, around 7:30 a.m., O.A.M. and J.A.M. presented their valid U.S. Passport Cards to the primary inspection officer at the San Ysidro Port of Entry pedestrian entrance ("PedWest") and were referred to secondary inspection. During the custodial secondary inspection beginning around 7:40 a.m., at first O.A.M. and J.A.M. were questioned together, then they were separated and individually questioned.

7. Over the course of O.A.M.'s 12 hours and J.A.M.'s 33 hours of custody, CBP officers repeatedly interrogated them, isolated them in various detention areas, forced each child into close quarters with handcuffed adult males, subjected O.A.M. and J.A.M. to inhumane conditions that were terrifying for a child, and repeatedly falsely accused O.A.M. and J.A.M. of being involved in sex-trafficking, prostitution, trafficking in organs, and other smuggling activity without any lawful justification

8. During the interrogation of O.A.M., CBP officers asked O.A.M. how many female cousins he had. He answered that he had three cousins and provided their names and respective ages. CBP Officers then made a statement indicating that J.A.M. was actually Melanie, the cousin closest to J.A.M.'s age. O.A.M. insisted that the girl he was with was actually his sister, J.A.M., and not his cousin. A male CBP officer told O.A.M. that his little sister looked too "developed" to be a 9-year-old. CBP officers continued to interrogate O.A.M. about the "true identity" of his sister. He was told that if he did not say that the girl was Melanie, that he would be arrested and charged with human and organ trafficking.

9. CBP officers told O.A.M. that if he said J.A.M. was Melanie, he would be released immediately. O.A.M. was scared of being arrested and charged with human and

3

organ trafficking, and he finally agreed to say his sister was his cousin. CBP officers coerced O.A.M. into writing out a declaration in which he stated that he went in the morning to pick up his cousin from her house and brought her to the border. After he wrote the statement, he was released to his mother, Mrs. Medina.

10. Throughout J.A.M.'s interrogation, CBP officers repeatedly told J.A.M. she was not the girl who was pictured on her U.S. Passport Card. At one point, J.A.M. showed them her school identification card to compare to the passport photo. She also had her school identification card from the previous year. CBP officers told J.A.M. she looked different than her photo. They told J.A.M. that if she did not say she was Melanie, her brother was going to be arrested and taken to jail. CBP officers explained that her brother would be in jail for many years and it would be her fault. Eventually, the CBP officers shared O.A.M.'s false coerced confession with J.A.M. and added that she was now alone. The CBP officers kept her in custody for another 24 hours until the following evening. After a total of approximately thirty-three hours, she was finally released to her mother, Mrs. Medina.

11. As soon as Mrs. Medina learned about her children not arriving at school, she immediately left the medical clinic in Tijuana while still in the pre-operative stages of her scheduled uterine surgery. After collecting further identity documents of O.A.M. and J.A.M., Mrs. Medina arrived at PedWest around 11 a.m. Mrs. Medina asked CBP Officers for her children and provided the CBP Officers with their names and dates of birth. CBP Officers told Mrs. Medina that her children were not in CBP's custody. Eventually, CBP Officers asked to see more documents regarding the children's identity and then told Mrs. Medina that they would check the surveillance cameras. Mrs. Medina continued to wait. CBP Officers blamed Mrs. Medina for losing her children, and told her to leave. Mrs. Medina called 911 and were told by the emergency dispatcher that the issue was not within their jurisdiction.

12. Mrs. Medina went back into the CBP building and continued to ask for information about her children. CBP Officers responded that they had so many people

1 detained that they did not know if her children were in their custody. They advised Mrs. Medina to go to her house and relax and they would let her know about her children later that evening or the next day. Mrs. Medina continued to wait.

13. That evening, a CBP officer called Mrs. Medina and told her that O.A.M. was her son but the little girl was not her daughter. The CBP officer said the little girl in CBP's custody "looked Honduran." He did not provide additional information and told Mrs. Medina he would call her back. Around 8 p.m., over 12 hours after her children were taken into CBP custody, Mrs. Medina received a call from CBP telling her she could pick up O.A.M.. Mrs. Medina arrived at PedEast with more documents and photographs of J.A.M., but she again was told by CBP officers that the girl in their custody was not her daughter. Mrs. Medina showed the CBP officers family pictures and told them to compare the photos to J.A.M.'s passport photos on file. The CBP Officers told her that the girl pictured in the photographs was J.A.M., but that the little girl in their custody was not the same person.

14. CBP Officers released O.A.M. to Mrs. Medina and told her to leave the premises. Mrs. Medina asked the CBP officers if they were going to give her something in writing to explain the detention of her daughter, but they refused her request and threatened to detain Mrs. Medina if she did not leave. Mrs. Medina went to the Coronado Police Station around 10 p.m. to ask for help finding her daughter, and then went to the Border Patrol station in San Ysidro around 11 p.m. Border Patrol agents suggested she contact the Mexican Consulate. Mrs. Medina called the Mexican Consulate and left a voicemail pleading for help.

15. Mrs. Medina continued her efforts to locate her daughter until around 5 p.m. on Tuesday when she received a call from the Mexican Consulate instructing her where to meet them at the SYPOE. After 33 hours of terror, Mrs. Medina was reunited with her 9-year-old daughter.

//
//

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: June 20, 2022

*/s/ Joseph M. McMullen*
Joseph M. McMullen
Declarant and Attorney for Plaintiffs