UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.A.M., a minor child; O.A.M., a minor child; and THELMA MEDINA Navarro, their mother,<br><br>                                   Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al,<br><br>                                   Defendants. | Case No.: 22-CV-0380-GPC-BGS<br><br>**ORDER DENYING DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1)**<br><br>**[ECF No. 4]** |

On May 24, 2022, Defendant United States of America ("Defendant" or "United States") filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6), or in the alternative, for summary judgment under Rule 56(a). ECF No. 4. On July 15, 2022, Plaintiffs filed an Ex Parte Application pursuant to Rule 56(d) for an order deferring consideration of Defendant's motion for summary judgment and to allow Plaintiffs to take discovery. ECF No. 10. The following day, the United States filed its Non-opposition to Plaintiffs' Ex Parte Application withdrawing its motions under Rules 12(b)(6) and 56(a). ECF No. 11. The parties have fully briefed the pending motion to dismiss. ECF Nos. 12, 14. For the reasons stated below, the Court **DENIES** the United States' motion to dismiss.

## I.   BACKGROUND

The dispute before the Court concerns whether the United States is liable under the Federal Tort Claims Act ("FTCA") for false imprisonment, intentional infliction of emotional distress, negligence, violations of California Civil Code § 52.1 (the "Bane Act") and for violations of Plaintiffs' Fourth and Fifth amendment rights. ECF No. 12 at 4.

The Complaint alleges the following facts. Thelma Medina Navarro ("Medina"), her husband, and their two children, 14-year-old O.A.M. and 9-year-old J.A.M. (collectively "Plaintiffs") live in Mexico near the U.S.-Mexico border. ECF No. 1 at 4. O.A.M. and J.A.M. are both U.S. citizens. *Id.* On March 18, 2019, Medina was scheduled for surgery at a medical clinic in Tijuana, Mexico and was unable to take her two children across the U.S.-Mexico border to school in the U.S. that morning. *Id.* Medina arranged for a close family friend, Michelle Cardenas ("Cardenas"), to take her kids to school. *Id.* Cardenas is also a U.S. citizen with two children attending the same schools as O.A.M. and J.A.M. *Id.*

Sometime around 4:30 a.m., Cardenas picked up O.A.M. and J.A.M. and drove to the San Ysidro Port of Entry to cross into the United States. ECF No. 1 at 4. At approximately 7:00 a.m., still waiting in line to cross the U.S.-Mexico border, Cardenas contacted the father of O.A.M. and J.A.M. to pick up the children and to take them to the western pedestrian crossing point ("PedWest"). *Id.* at 5. The father of O.A.M. and J.A.M. is a Mexican citizen without a visa to cross into the United States with his children so the children proceeded to cross without him. *Id.* Around 7:30 a.m., O.A.M. and J.A.M. presented their U.S. passport cards to the Customs and Border Protection ("CBP") primary inspector. *Id.* The primary inspector questioned the two children and referred them both to secondary inspection. *Id.* During secondary inspection, the children were initially questioned together, but were then separated and questioned individually. *Id.*

Around 9:40 a.m., after not hearing from O.A.M. and J.A.M., Cardenas crossed the U.S.-Mexico border and headed to PedWest where she confirmed with CBP Officers that O.A.M. and J.A.M. were in custody. ECF No. 1 at 5-6. At approximately 11:00 a.m., after leaving the pre-operative stage of her surgery, Medina arrived at PedWest looking for O.A.M. and J.A.M.. *Id.* at 6. Initially, CBP Officers advised Medina that her children were not in custody and had not crossed PedWest that day. *Id.* After multiple hours of CBP Officers advising Medina that they were unable to locate O.A.M. and J.A.M., Medina was advised to return home and that she would be contacted about her children later that evening or the next day. *Id.*

At approximately 6:40 p.m. that same day, CBP Officer 1 advised Cardenas that he believed that O.A.M. was born in the United States, but that the individual claiming to be J.A.M. appeared to be an imposter who did not have legal permission to be in the United States. ECF No. 1 at 6. Around 8:00 p.m., Medina received a call from CBP Officer 1 that she could pick up O.A.M., but that J.A.M. was an imposter and not her daughter. *Id.* at 6-7. When Medina arrived at PedWest to pick up O.A.M., CBP officers again explained to her that the girl in their custody was not her daughter, J.A.M.. *Id.* at 7. Medina then contacted the Mexican Consulate, who reunited Medina with her daughter at the San Ysidro Port of Entry the following afternoon. *Id.*

Plaintiffs state that during O.A.M.'s and J.A.M.'s time in custody, CBP Officer 2 and CBP Officer 3 repeatedly interrogated the children, isolated them in various detention areas, forced them into close quarters with handcuffed adult males, subjected them to inhumane conditions, and repeatedly accused them of being involved in sex-trafficking, prostitution, trafficking organs, and other smuggling activity without any lawful justification. ECF No. 1 at 7-8. Additionally, Plaintiffs allege that CBP Officers 1, 2, and/or 3 interrogated, intimidated, and threated O.A.M. about the "true identity" of his

sister and coerced him into writing a declaration proclaiming that J.A.M. was actually his cousin. *Id.* at 8. O.A.M. was then released to his mother. *Id.*

Similarly, J.A.M. was interrogated by CBP Officers 1, 2, and/or 3. ECF No. 1 at 8. During her interrogation, the officers repeatedly told her that she was not the girl who was pictured in J.A.M.'s U.S. passport card, but instead, was O.A.M.'s cousin named Melany. *Id.* at 8-9. The officers advised J.A.M. that if she did not confess to being Melany that her brother O.A.M. was going to be arrested and taken to jail. *Id.* After several hours, the officers showed J.A.M. her brother O.A.M.'s coerced false confession. *Id.* J.A.M. was not released for another 24 hours. *Id.*

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows for dismissal of a complaint for lack of subject matter jurisdiction. "[F]ederal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citing *Cal. Ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979)). Subject matter jurisdiction must exist when the action is commenced. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) (citing *Mollan v. Torrance*, 22 U.S. 9 Wheat. 537, 538 (1824)). Further, subject matter jurisdiction may be raised "at any stage of the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

A Rule 12(b)(1) jurisdictional attack may be "facial" or "factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). A facial attack asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A

factual attack raises a challenge to the truth of the factual basis upon which federal jurisdiction is predicated. *Id.*

A factual attack demonstrates the lack of jurisdiction of the facts of the case. *Wolfe v. Strankman*, 392 F. 3d 358, 3562 (9th Cir. 2004). When evaluating a factual attack on jurisdiction, a district court may review evidence beyond the pleadings without converting the motion to dismiss into a motion for summary judgment. *Id.* (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.*

However, jurisdictional dismissals in cases premised on federal question jurisdiction are exceptions rather than the rule, and must satisfy the standard set out by the Supreme Court in *Bell v. Hood*: that jurisdictional dismissals are warranted "where the alleged claim under the constitution or federal statues clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946). The Ninth Circuit has held that "a jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Safe Air*, 373 F.3d at 1039 (citing *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983)). "The question of jurisdiction and the merits of an action are intertwined where a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Id.*

///

///

## III. DISCUSSION

The United States contends that this case should be dismissed for lack of standing because "[t]he discretionary function exception bars all of Plaintiffs' claims" and "because the CBP officers exercised discretion within the mandates of 8 U.S.C. § 1232 and the confines of the U.S. Constitution." ECF No. 4 at 15. Plaintiffs contend that there are still disputed issues of fact that must be resolved before the Court can determine whether the discretionary function exception applies. ECF No. 12 at 14.

### A. The Federal Torts Claim Act

The United States has sovereign immunity and cannot be sued without its consent. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The FTCA provides a broad waiver of the government's sovereign immunity for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). In those cases, the government may be held liable for negligence "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. "Liability is determined by the tort law of the state where the claim arose." *Gasho v. United States*, 39 F.3d 1420, 1427 (9th Cir. 1994).

### B. The Law Enforcement Proviso

Generally, the FTCA does not waive sovereign immunity for intentional tort claims. *See* 28 U.S.C. § 2680(h). However, "[i]n 1974, Congress carved out an exception to § 2680(h)'s preservation of the United States' sovereign immunity for intentional torts by adding a proviso covering claims that arise out of the wrongful conduct of law enforcement officers" acting within the scope of their employment. *Millbrook v. United States*, 569 U.S. 50, 52 (2013). "Known as the 'law enforcement proviso,' this provision extends the waiver of sovereign immunity to claims for six intentional torts, including [false imprisonment], that are based on the 'acts or omissions of investigative or law enforcement officers.'" *Id.* at 52-53 (quoting 28 U.S.C. § 2680(h)). The proviso defines "investigative

or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). Customs and Border Protection officials are investigative or law enforcement officers for the purpose of the FTCA. *Andrade-Tafolla v. United States*, 536 F.Supp.3d 764, 771 (D. Or. 2021) (citing *Caban v. United States*, 671 F.2d 1230, 1234-35 (2d Cir. 1982)); *see also* 28 U.S.C. § 1346(b). "On its face, the law enforcement proviso applies where a claim both arises out of one of the proviso's six intentional torts [assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution], and is related to the 'acts or omissions' of an 'investigative or law enforcement officer'" who is "acting within the scope of his office or employment." *Millbrook*, 569 U.S. at 54-55 (quoting 28 U.S.C. § 1346(b)).

### C. Discretionary Function Exception to the FTCA

The United States' "broad waiver of sovereign immunity [under the FTCA] is subject to a number of exceptions set forth in § 2680." *Millbrook*, 569 at 52. "If an exception applies, sovereign immunity is not waived, and no subject matter jurisdiction exists." *Gen'l Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1988). In the Ninth Circuit, "the United States bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity." *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

The discretionary function exception to the waiver of sovereign immunity under the FTCA precludes claims against the United States which are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception is designed to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy." *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (quoting *United*

*States v. Varig Airlines*, 467 U.S. 797, 814 (1984) (internal quotation marks omitted); *see also Gasho*, 39 F.3d at 1435 ("[A]n act is shielded from liability [under the discretionary function exception] if judicial second-guessing would interfere with the federal employee's exercise of independent policy judgments").

"Whether a challenged action falls within the discretionary function exception requires a particularized analysis of the specific agency action challenged." *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002). Courts engage in a two-step inquiry to determine if the exception applies. *See Berkovitz v. United States*, 486 U.S. 531, 536 (1988). "First, for the exception to apply, the challenged conduct must be discretionary—that is, it must involve an element of judgment or choice." *GATX*, 286 F.3d at 1173. "In general, governmental conduct cannot be discretionary if it violates a legal mandate." *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000). Second, "[i]f the conduct involves choice or discretion, the court must then 'determine whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *GATX*, 286 F.3d at 1174 (quoting *Berkovitz*, 486 U.S. at 536). The focus is on "the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.

Here, the United States contends that, as noncitizen applicants for admission to the United States, CBP officers were required by 8 U.S.C. § 1232(a)(2)(A) to screen J.A.M. and O.A.M. and to determine whether they were or would be victims of human trafficking.[1]

---

[1] In pertinent part, 8 U.S.C. § 1232 states that "[a]ny unaccompanied alien child who is a national or habitual resident of a country that is contiguous with the United States shall be [] screened to determine whether [] [the] child [] has been a victim of a severe form of trafficking in persons, and [that] there is no credible evidence that such child is at risk of being trafficked upon return to the child's country of nationality or of last habitual residence." *See* 8 U.S.C. §§ 1232(a)(2), 1232(a)(2)(ii), 1232(a)(4).

*Id.* at 17. The United States argues that, in carrying out their statutory mandated screening of J.A.M. and O.A.M., CBP officers exercised their investigative discretion. *Id.* at 16.

Plaintiffs responds that the discretionary function exception does not apply because federal employees do not possess the discretion to violate constitutional rights. ECF No. 12 at 6 (citing *Galvin v. Hay*, 374 F.3d 739, 757-58 (9th. Cir. 2004) ("As federal officials do not possess discretion to violate constitutional rights, the discretionary function exception does not apply here."). Plaintiffs argue that, once in secondary screening, CBP officers subjected the two children to threats, intimidation, and coercive tactics for hours until the children falsely confessed that J.A.M. was a noncitizen imposter named Melany, causing their unlawful detention and separation from their mother. ECF No. 1 at 7-9; ECF No. 12 at 9. Plaintiffs submit that the discretionary function exception does not shield the United States' unconstitutional actions. ECF No. 12 at 9.

### D. Analysis

The Ninth Circuit has held that the liability created by the law enforcement proviso is subject to the FTCA's discretionary function exception. *Gasho*, 39 F.3d at 1435. "If a defendant can show that the tortious conduct involves a 'discretionary function,' a plaintiff cannot maintain an FTCA claim, even if the discretionary act constitutes an intentional tort under section 2680(h)." *Id.* However, as a general rule, "governmental conduct cannot be discretionary if it violates a legal mandate." *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) (citing *Nurse v. United States*, 226 F.3d 996, 1002, n. 2 (9th Cir. 2000) (holding that "the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply."); *see also Plascencia v. United States*, No. EDCV 17-02515 JGB (SPx), 2018 WL 6133713, at *7 (C.D. Cal. May 25, 2018) ("if an officer violates the constitution or a statute during his or her investigation, that action is not protected by the discretionary function." (citation omitted)).

This Court must first assess the "nature of the conduct" at the heart of Plaintiffs' claims to determine whether the discretionary function exception bars relief. *Gaubert*, 499 U.S. at 322. Because an assessment of whether the discretionary function exception applies requires a particularized analysis of the conduct at the center of Plaintiffs substantive claims, this Court may not resolve genuine disputes of fact raised by Defendants extrinsic evidence at this stage. *See Sun Valley Gasoline, Inc.*, 711 F.2d at 139 (A court may not resolve genuinely disputed facts on a motion to dismiss under 12(b)(1) "where jurisdictional and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action.") Rather, this court must assume the truth of the allegations in the Complaint unless they are "controverted by undisputed facts in the record." *Roberts*, 812 F.2d at 1177.

As acknowledged by the United States, the "crux of Plaintiffs' Complaint is their allegation that CBP officers in the AEU subjected J.A.M. and O.A.M. to several hours of interrogation, intimidation, and threats." ECF No. 4 at 6. The United States argues that CBP officers were justified in detaining and questioning J.A.M. and O.A.M. for an extended period of time because "*from the outset and throughout the process*" J.A.M. and O.A.M. claimed "that J.A.M. was a noncitizen imposter." ECF No. 4 at 18 (emphasis added). Specifically, the United States contends that because Plaintiffs confessed to CBP officers that J.A.M. was a noncitizen imposter "within ten to twenty minutes" of being sent to secondary screening, CBP officers were required to determine, among other things, whether she was or would be the victim of human trafficking. ECF No. 4 at 7, 17; *see also* 8 U.S.C. § 1232. However, the crux of this issue actually centers on whether J.A.M. and O.A.M. "from the outset" advised CBP officers that J.A.M. was a noncitizen imposter. Regarding this dispute, the parties proffer two different scenarios.

According to the United States, J.A.M. and O.A.M. arrived at the PedWest gate to cross from Mexico into the United States at 7:30 a.m. on March 18, 2019 and were sent to

secondary screening when CBP officers became suspicious of J.A.M. because of a mole that was present on her face in her passport picture but was not present on her face as she appeared that day. ECF No. 4 at 8; ECF No. 4-2, Declaration of Willmy Lara ("Lara Decl.") ¶2. According to the United States, during secondary screening, CBP Officer Vincent initially interviewed J.A.M. and O.A.M. together and then separately. ECF No. 4 at 8; Lara Decl. ¶3-4. However, that "within ten to twenty minutes" of being in secondary, both children confessed to Officer Vincent that J.A.M. was a noncitizen imposter. *Id.* Thus, according to the United States, detaining O.A.M. and J.A.M. was justified because under 8 U.S.C. § 1232(a)(4), "CBP officers must screen any unaccompanied *noncitizen*[] child who is a 'habitual resident of a country that is contiguous with the united states' to determine, among other things, whether the child has been the victim of human trafficking." ECF No. 4 at 17 (emphasis added); *see also* 8 U.S.C. § 1232.

According to Plaintiffs, J.A.M. and O.A.M. arrived at PedWest gate to cross from Mexico into the United States at 7:30 a.m. on March 18, 2019 and presented CBP primary inspector with their U.S. passports. ECF No. 1 at 5. The children were then subsequently sent to secondary where they were questioned together and then separated and questioned individually. ECF No. 1 at 5. Once the children were separated, CBP officers began to interrogate O.A.M. about the "true identity" of his sister. *Id.* at 8. CBP officers advised O.A.M. that if he did not confess that J.A.M. was actually his cousin Melany (who is not a citizen of the United States), that he would be arrested and charged with human and organ trafficking. *Id.* After hours of interrogation, intimidation, and threats, O.A.M. agreed to say that J.A.M. was actually his cousin Melany and provided the officers with a written declaration to that effect. *Id.*; ECF No. 4-1 at 10. O.A.M. was subsequently released after 12 hours of custody. ECF No. 1 at 8. Similarly, CBP officers repeatedly told J.A.M. that she was not the girl pictured on her U.S. passport card and that if she did not confess to being her cousin Melany, O.A.M. would be arrested and taken to jail. ECF No. 1 at 8-9.

After O.A.M. made his false confession, CBP officers shared his false confession with J.A.M. and advised her that she was alone. ECF No. 1 at 8-9. Eventually, J.A.M. also provided CBP officers with a false confession stating that she was her cousin Melany. ECF No. 4-1 at 11.

If the United States version of the facts is true, then the subsequent detention of J.A.M. and O.A.M. may have been justified and, as such, could bar Plaintiffs claims under the FTCA. *See Gasho*, 39 F.3d at 1435. On the other hand, if Plaintiffs' version of the facts is true, then the United States' conduct may have violated a legal mandate and, as such, the discretionary function exception may not apply, leaving the United States potentially liable for the alleged wrongful conduct. *See Galvin*, 374 F.3d at 758. It is not disputed that J.A.M. is a citizen of the United States and appears to have presented CBP officers with a valid U.S. Passport. ECF No. 1 at 5; ECF No. 4-1 at 2. However, what happened afterwards is in dispute. Additionally, the United States initially indicated that CBP officials were in possession of "system records, transcripts from interviews with [J.A.M. and O.A.M.], and hard copies of the two children's U.S. passports." ECF No. 4-1 at 20. However, in its reply, the United States explains that "although interviews of J.A.M. and O.A.M. in the AEU were likely recorded, none were preserved, and there never were any transcripts of such recordings." ECF No. 14 at n. 2. Unfortunately, the evidence that could have resolved this dispute is apparently no longer available.

The Court is clearly faced with a genuine issue of material fact. And, because the facts necessary to decide whether the discretionary function exception of the FTCA bars Plaintiffs claims remain in dispute, the Court finds that the United States is not entitled to the protection of that exception at this time. *See Sun Valley Gasoline, Inc.*, 711 F.2d at 139 (holding that a court may not resolve genuine disputes of fact at the motion to dismiss stage).

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** the United States' motion to dismiss Plaintiffs' claims as barred by the discretionary function exception to the FTCA.

**IT IS SO ORDERED.**

Dated: July 21, 2022

Hon. Gonzalo P. Curiel
United States District Judge