Joseph M. McMullen, Esq. (SBN 246757)
Law Offices of Joseph M. McMullen
501 W. Broadway, Suite 1510
San Diego, CA 92101
Phone: (619) 501-2000
Facsimile: (619) 615-2264
Email: joe@jmm-legal.com

Attorney for Plaintiffs J.A.M., O.A.M., and Thelma Medina Navarro

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.A.M., a minor child, O.A.M., a minor child; and THELMA MEDINA NAVARRO, their mother,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 3:22-cv-00380-GPC-BGS<br><br>**PLAINTIFFS' TRIAL BRIEF**<br><br>District Judge: Hon. Gonzalo P. Curiel<br>Courtroom 2D, 2nd Fl. (Schwartz)<br>Magistrate Judge: Hon. Bernard G. Skomal<br>Chambers Room 1080 (Carter-Keep)<br><br>Complaint Filed:   March 21, 2022<br>Trial Date:   March 19, 2024 |

# TABLE OF AUTHORITIES

**US SUPREME COURT CASES**

*United States v. Montoya de Hernandez*,
   473 U.S. 531 (1985) .................................................................................. 12

*Chavez v. Martinez*,
   538 U.S. 760 (2003) .................................................................................. 16

*Cnty. of Sacramento v. Lewis*,
   523 U.S. 833 (1998) .................................................................................. 16

*Board of Dir. v. Rotary Club*,
   481 U.S. 537 (1987) .................................................................................. 18

*Berkovitz v. United States*,
   486 U.S. 531 (1988) .................................................................................. 18

108 S.Ct. 1954 ................................................................................................ 18

**FEDERAL CASES**

*Conrad v. United States*,
   447 F.3d 760 (9th Cir. 2006) ..................................................................... 10

*Tekle v. U.S.*,
   511 F.3d 839 (9th Cir. 2006) ..................................................................... 10

*United States v. Cotterman*,
   709 F.3d 952 (9th Cir. 2013) ..................................................................... 12

*Sabow v. United States*,
   93 F.3d 1445 (9th Cir. 1996) ............................................................... 12, 13

*Crain v. Krehbiel*,
   443 F.Supp. 202 (N.D. Cal. 1978) ............................................................. 13

*Steinle v. United States*,
   17 F.4th 819 (9th Cir. 2021) ...................................................................... 13

*GATX/Airlog Co. v. United States*,
   286 F.3d 1168 (9th Cir. 2002) ................................................................... 15

*Prescott v. United States*,
   973 F.2d 696 (9th Cir. 1992) ..................................................................... 15

*Nurse v. United States*,
   226 F.3d 996 (9th Cir. 2000) ....................................................................................... 15

*Galvin v. Hay*,
   374 F.3d 739 (9th Cir. 2004) ....................................................................................... 15

*Nicholson v. City of Los Angeles*,
   935 F.3d 685 (9th Cir. 2019) ....................................................................................... 16

*United States v. Ortiz-Hernandez*,
   427 F.3d 567 (9th Cir. 2005) ....................................................................................... 16

*Sialoi v. City of San Diego*,
   823 F.3d 1223 (9th Cir. 2016) ..................................................................................... 16

*Stoot v. City of Everett*,
   582 F.3d 910 (9th Cir. 2009) ................................................................................ 16, 16

*Crowe v. Cnty. of San Diego*,
   608 F.3d 406 (9th Cir. 2010) ....................................................................................... 16

*U.S. v. Tingle*,
   658 F.2d 1332 (9th Cir. 1981) ..................................................................................... 16

*United States v. McShane*,
   462 F.2d 5 (9th.Cir. 1972) ........................................................................................... 17

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ................................................................................ 17, 17

*Kelson v. City of Springfield*,
   767 F.2d 651 (9th Cir. 1985) ....................................................................................... 17

*Smith v. City of Fontana*,
   818 F.2d 1411 (9th Cir. 1987) ..................................................................................... 17

**STATE CASES**

*Collins v. City & Cnty. of San Francisco*,
   50 Cal.App.3d 671 (1975) ........................................................................................... 10

*Fermino v. Fedco*,
   7 Cal.4th 701 (1994) ....................................................................................... 10, 10, 11

*Easton v. Sutter Coast Hosp.*,
   80 Cal.App.4th 485 (2000) .......................................................................................... 10

*Collyer v. S.H. Kress & Co.*,
   5 Cal.2d 175 (1936) .................................................................................................... 10

*Moffatt v. Buffums' Inc.*,
    21 Cal.App.2d 371 ............................................................................................... 11

*Alcorn v. Anbro Engineering, Inc.*,
    2 Cal.3d 493; 468 P.2d 218 (1970) ..................................................................... 12

*Johnson v. Sampson*,
    167 Minn. 203; 208 N.W. 814 (1926) ................................................................ 13

*Spackman v. Good*,
    245 Cal.App.2d 518 (1966) ................................................................................ 13

*Bowden v. Spiegel*,
    96 Cal.App. 793 (1950) ...................................................................................... 13

*Emden v. Vitz*,
    88 Cal.App.2d 313 (1948) .................................................................................. 13

*Vasilenko v. Grace Fam. Church*,
    3 Cal. 5th 1077 (2017) ........................................................................................ 13

*Juarez v. Boy Scouts of America, Inc.*,
    97 Cal. Rptr.2d 12 (2000) ............................................................................. 13, 13

*Wallace v. Der-Ohanian*,
    199 Cal.App.2d 141 (1962) ................................................................................ 13

*Fowler v. Seaton*,
    61 Cal.2d 681 (1964) .......................................................................................... 14

*Pamela L. v. Farmer*,
    112 Cal.App.3d 206 (1980) ................................................................................ 14

*In re Marriage of Harris*,
    112 Cal.Rptr.2d 127 (2001) ................................................................................ 15

**STATE CONSTITUTIONAL PROVISIONS**

California Article I Section 1 ..................................................................................... 15

**FEDERAL STATUTES**

Title 28 U.S.C. § 2680(h) ........................................................................................... 10

Title 28 U.S.C. § 2680(a) ........................................................................................... 15

Title 42 U.S.C. § 1983 ................................................................................................ 17

**STATE STATUTES**

Cal. Civil Code § 52.1 .................................................................................................. 6, 14

Cal. Penal Code § 236 ...................................................................................................... 10

Cal. Pen. Code § 490.5(f)(1) ............................................................................................ 10

## I. INTRODUCTION

Plaintiffs' J.A.M. and O.A.M. [1], by and through their mother and guardian Thelma Medina Navarro ("the Children"), and Thelma Medina Navarro ("Mrs. Medina") (collectively "Plaintiffs"), bring this action against Defendant United States of America ("Defendant" or "the United States") under the Federal Tort Claims Act ("FTCA") for emotional injuries sustained during the Children's prolonged detention by U.S. Customs & Border Protection ("CBP") Officers at the San Ysidro Port of Entry ("SYPOE") despite the Children's presentation of their valid U.S. Passport Cards.  The United States is liable under the FTCA for false imprisonment, intentional infliction of emotional distress, and negligence.  Plaintiffs have agreed to stipulate to not pursue Plaintiffs' claim for violations of California Civil Code 52.1 (the "Bane Act"). Plaintiffs further assert that Plaintiffs' Fourth and Fifth Amendment rights were violated, rendering the FTCA's Discretionary Function Exception ("DFE") inapplicable here.  The DFE is also inapplicable because CBP Officers did not have discretion to detain O.A.M. and J.A.M. for more than three hours without attempting to contact their mother, or to refuse to allow the U.S. Citizen minors to be with their mother, Mrs. Medina, during their secondary processing.

## II. STATEMENT OF FACTS

### A. PedWest Primary / Secondary Inspection

In early 2019, 14-year-old O.A.M. was midway through his first year at San Ysidro High School, and 9-year-old J.A.M. began attending school in the United States as well.  Like many U.S. Citizen children who live in the San Diego-Tijuana metropolitan area on the Mexico side of the border, O.A.M. and J.A.M. routinely woke up hours before school began to make it through the long lines at the port of entry and arrive in class on time.

On Monday, March 18, 2019, around 7:30 a.m., O.A.M. and J.A.M. presented their valid U.S. Passport Cards to a primary inspection officer at PedWest. The primary officer noticed a dot on J.A.M.'s passport card photo that appeared to be a mole on her upper lip was not present on J.A.M. in person, so she referred the Children to secondary inspection at 7:39 a.m.

---

[1] Oscar Amparo Medina was formerly a minor child referred to in previous pleadings as "O.A.M."  Although he is no longer a minor, for the sake of continuity and brevity, he is referred to here as O.A.M.

At PedWest secondary, the Children were seated together in the main intake area, and then summoned to approach CBP Officer Erick Melendrez to answer some general questions. CBP Officer Willmy Lara then brought J.A.M. to a private security office alone and proceeded to question her about her name, the school she attended, and whether she was sure she was the person on her passport card. J.A.M. answered each question correctly, and stated she was sure she was the person on her passport card.

Meanwhile, out in the main intake area, Officer Melendrez asked O.A.M. if he had female cousins in Mexico, and O.A.M. responded with their names and approximate ages, including 10-year-old Melany. Officer Melendrez shared this information with Officer Lara, who concluded that J.A.M. was Melany.

Officer Lara went back and forth between the private security office and the main intake area, pressuring the Children to confirm his conclusion that J.A.M. was Melany. The Children continued to stand by the truth that J.A.M. was not Melany. Officer Lara eventually told O.A.M., "If you admit that she's your cousin, we will return her [to Mexico], and you, we will allow to keep on going [into the U.S.]." When O.A.M. responded that she was his sister, Officer Lara removed his handcuffs and O.A.M. thought he was about to be arrested. Officer Lara instead turned with the handcuffs and headed back to the security office, leaving O.A.M. in fear that his sister was going to be handcuffed.

After Officer Lara went back into the security office alone with J.A.M., Officer Melendrez taunted O.A.M., "You see, you're screwed for not telling the truth. That's what happens to you for not telling the truth." Officer Melendrez's and Officer Lara's interrogation and pressure tactics on the Children continued for between an hour and an hour-and-a-half. At no point did either of the Children state that J.A.M. was Melany or anyone other than O.A.M.'s little sister.

### B. Admissibility Enforcement Unit

Sometime between 9am and 10am, the Children were fingerprinted and then loaded into a panel van and driven to the Admissibility Enforcement Unit (AEU)'s underground interview and detention location at the main San Ysidro Port of Entry location. At the AEU, the Children's backpacks were confiscated, and they were directed through a large reinforced metal door, down

a hallway with appeared to be several prison cells on either side. At the end of the hallway they were seated on metal benches in a large intake area.

Instead of being offered the opportunity to have their mother contacted after surpassing three hours of detention at 10:39 a.m., the Children were held incommunicado in the underground AEU for hours, filled with fear about whether they would ever be released. Around 4:09 p.m., after over eight hours since the Children's referral to secondary inspection, CBP Officer John Bosch processed O.A.M.'s entry into the AEU. Intermittently over the next three hours between 4:09 p.m. and 7:30 p.m., the Children were subjected to coercive interrogation techniques by CBP Officer Julio Corrales.

Officer Corrales separately interrogated each of the Children in an AEU interview room, while the other child remained out in the AEU intake area. During Officer Corrales' interrogation of J.A.M., he told her that she was not J.A.M., that she was Melany, and falsely told her that her fingerprints did not coincide with those on J.A.M.'s passport record. J.A.M. denied she was Melany, but Officer Corrales persisted. He threatened that if J.A.M. did not say she was Melany then O.A.M. was going to go to jail for smuggling minors and selling organs. J.A.M. was terrified about the prospect of causing her brother to go to jail.

Officer Corrales employed a different interrogation approach with O.A.M. He learned that O.A.M. was interested in a career in the United States Navy, and then promised that admitting the girl was his cousin Melany was the only path that would keep his record clean and not ruin his military aspirations. Officer Corrales also made it clear that the only action that would enable either of the Children to get out of the AEU was to say J.A.M. was Melany. O.A.M. affirmed he was willing to say Melany was his cousin, and Officer Corrales promised that J.A.M. would be returned to her mother in Mexico as soon as the Children wrote out a confession.

O.A.M. went back to the AEU intake area, sat down with his sister, gave her a hug, and convinced her to write the statement Officer Corrales promised would set them free: that J.A.M. was O.A.M.'s cousin Melany, who was using O.A.M.'s sister's passport to go to school.

Around 7:30 p.m., after Officer Corrales collected their written statements, the Children were placed in separate AEU detention cells with other detainees of the same gender and approximate ages.

### C. Release of the Children

At approximately 9 or 10 p.m. on Monday, March 18, 2019, O.A.M. was released from AEU detention and turned over to his mother, Mrs. Medina, about 13 or 14 hours after his detention began.

Instead of being released along with her brother, J.A.M. spent a sleepless night in Detention Cell 26, where she remained for nearly 22.5 hours. Mrs. Medina did not relent in her desperate efforts to secure the release of her daughter, and ultimately was able to obtain the assistance of the Mexican Consulate and Telemundo bring J.A.M.'s detention to the attention of high-ranking officials at the SYPOE.

Upon learning there might be a U.S. Citizen minor in detention at the AEU, then-Watch Commander (now-Port Director) Mariza Marin promptly retrieved J.A.M. from her cell, interviewed her in a manner appropriate to her age and vulnerabilities, and applied her training to quickly and definitively conclude that J.A.M. was in fact the 9-year-old girl on her U.S. Passport Card. WC Marin proceeded to ensure that J.A.M. was released to her mother without further delay. At 6:00 p.m. on Tuesday, March 19, 2024, J.A.M. was released to her mother, Mrs. Medina, after roughly 34 hours of detention.

### D. Plaintiffs' State Post-March 19, 2019

Plaintiffs' emotional injuries as a result of the incident have manifested themselves in a variety of ways since the Children were released from detention. From sleeplessness, nightmares, and bed-wetting to bouts of paranoia and fear in everyday situations, each of the Plaintiffs have struggled with the emotional impact of the incident. When Mrs. Medina managed to fall asleep at night, she would wake up to see if her children were still in their beds, especially when J.A.M. would wake up crying. J.A.M. and O.A.M. both began seeing a mental health counselor within weeks of the incident, and continued sessions via videoconference during the first several months of the pandemic.

J.A.M. and O.A.M. have also had to try to silence their vivid memories of the incident, and the lingering doubts that the full panoply of rights and privileges of United States Citizenship might not be available to someone born in the U.S. with familial and historical ties to Mexico. For both J.A.M. and O.A.M., the shadows of these doubts have not overcome their unrelenting and spirited climb toward the goals for their future, but nor have they vanished.

## III.   ARGUMENT

### A.   FTCA Claims - Generally

At trial, Plaintiffs will pursue three of its four pending tort claims: false imprisonment, intentional infliction of emotional distress, and negligence. In assessing the United States' liability under the FTCA, federal courts are required to apply the law of the state in which the alleged tort occurred. *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006).

### B.   The Hours-Long Detention of the Children at the Border without Probable Cause is Sufficient to Establish a False Imprisonment Claim

The FTCA allows liability for false arrest or false imprisonment when they are committed by federal law enforcement officers. 28 U.S.C. § 2680(h); *Collins v. City & Cnty. of San Francisco*, 50 Cal.App.3d 671, 674 (1975) (stating that false arrest is "but one way of committing false imprisonment, and they are distinguishable only in terminology").

In California, the "crime of false imprisonment is defined by Penal Code section 236 as the 'unlawful violation of the personal liberty of another.' The tort is identically defined." *Fermino v. Fedco*, 7 Cal.4th 701, 715 (1994). Under California law, the elements of a tortious claim of false imprisonment are: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Tekle v. U.S.*, 511 F.3d 839, 854 (9th Cir. 2006) (citing *Easton v. Sutter Coast Hosp.*, 80 Cal.App.4th 485, 495 (2000)). The mental state required for false imprisonment is intent to confine. *Fermino*, 7 Cal.4th 716.

Probable cause "is a justification for the detention" of a plaintiff in a false imprisonment case. *Collyer v. S.H. Kress & Co.*, 5 Cal.2d 175, 180-81 (1936). *See also Fermino*, 7 Cal.4th at 716 (probable cause to detain a privilege against a false imprisonment action); Cal. Pen. Code

§ 490.5(f)(1) ("A merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise form another merchant's premises.").

The detention of a plaintiff, however, "must be carried out for a reasonable time and in a reasonable manner." *Fermino*, 7 Cal.4th at 716. Actions that go beyond the bounds of reasonable interrogation and detention constitute false imprisonment. *Id.* at 716-17. *Compare Collyer*, 5 Cal. 2d at 181 (merchant's detention of an alleged shoplifter for twenty minutes held to be reasonable), *with Moffatt v. Buffums' Inc.*, 21 Cal.App.2d 371 (2d Dist. 1937) (defendant corporation's five hour detention of plaintiff to interrogate plaintiff and coerce a false confession from her that she stole money at an earlier time held to be unreasonable).

In *Fermino*, the California Supreme Court considered the argument of a merchant-employer, Fedco, Inc., who contended that its alleged false imprisonment of plaintiff-employee was "motivated by legitimate employer objectives and was carried out in a manner reasonably related to those objectives. 7 Cal.4th at 721. The *Fermino* court found plaintiff-employee had sufficiently plead a false imprisonment claim against Fedco. *Id.* at 723 n.8. Fedco argued that its actions in questioning a salesperson employee regarding a possible theft were were "a normal part of employment." *Id.* at 717. The California Supreme Court observed that Fedco's contention assumed that a false imprisonment could be considered "reasonable" and a normal part of the employment relationship, in contrast to "unreasonable" false imprisonments that have illegitimate motivations or use disproportionate means. *Id.* at 721.

But the *Fermino* court rejected the concept of a "reasonable" false imprisonment as "oxymoronic" – "[f]alse imprisonment is, by definition, an unreasonable and indeed criminal confinement." *Id*. The tort of false imprisonment did not require showing "an intent or motive to cause harm; indeed false imprisonments often appear to arise from initially legitimate motives." *Id*. at 716. The only intent required was an intent to confine. *Id*. Thus, "[w]hen an employer forcibly and criminally deprives an employee of her liberty, even as a means to otherwise

legitimate ends, it steps outside its 'proper role,' whether it uses assault and battery to enforce that false imprisonment, or employs some other coercive stratagem." *Fermino*, 7 Cal. 4th 721-22.

Here, applying the private person standard for the tort for false imprisonment shows no legal justification relieved the United States from liability for its detention of O.A.M. or J.A.M. beyond a routine border search. While at the international border, however, it is well-settled that law enforcement agents may seize a person to conduct a routine border search without reasonable suspicion. *See, e.g., United States v. Montoya de Hernandez*, 473 U.S. 531, 540 (1985). "This does not mean, however, that at the border 'anything goes.'" *United States v. Cotterman*, 709 F.3d 952, 960 (9th Cir. 2013) (en banc). Even at the border, "the touchstone of the Fourth Amendment analysis remains reasonableness…and the reasonableness of a search or seizure depends on the totality of the circumstances, including the scope and *duration* of the deprivation." *Id.* (emphasis added).

Here, the 13-plus and 34-plus hours long detentions of minors O.A.M. and J.A.M. without reasonable suspicion beyond involuntary coerced false confessions after more than 8 hours of detention far exceed "lawful privilege" for a routine border search. Accordingly, the false imprisonment claim will be established.

  **C.**  **The United States is Liable for Intentional Infliction of Emotional Distress**

"Under California law, the elements of intentional infliction of emotional distress [(IIED)] are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct." *Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996) (reversing dismissal of IIED claim in FTCA case).

California courts have long recognized that the outrageousness of a defendant's conduct in an IIED claim is compounded by the abuse of their official authority because one relevant factor in determining whether the defendant's conduct is outrageous is the defendant's "position or relation of authority over plaintiff." *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 468 P.2d at 218 (1970). A seminal case upon which multiple California courts have relied in support of IIED

claims arising out of threatened loss of liberty is *Johnson v. Sampson*, 167 Minn. 203, 208 N.W. 814 (1926) (cited favorably by *Spackman v. Good*, 245 Cal.App.2d 518 (1966); *Bowden v. Spiegel*, 96 Cal.App. 793 (1950); and *Emden v. Vitz*, 88 Cal.App.2d 313 (1948)). In *Johnson*, the court held a cause of action sounding in IIED could be established where plaintiff "school girl 15 years of age" alleged school officials "came to the school house and took her into a separate room," falsely accused her of wrongdoing, and obtained her false confession by telling her if she did not confess she would suffer a loss of personal liberty. *Id.* at *2; *see also Crain v. Krehbiel*, 443 F.Supp. 202, 212-213 (N.D. Cal. 1978) (cited favorably by *Sabow*, 93 F.3d at 1455) (holding that DEA's verbally threatening and intimidating conduct toward plaintiff during conversations with plaintiff in course of investigation states a claim of extreme and outrageous conduct under California law).

Here, CBP Officers engaged in extreme and outrageous conduct by threatening the Children with jail if the Children continued to refuse to confess; and by intentionally keeping Mrs. Medina separated from her children during the ordeal described above. Accordingly, the IIED claim will be established at trial.

**D.   The CBP Officers Breached Their Duty of Due Care to Plaintiffs**

In California, the "plaintiff in a negligence suit must demonstrate a legal duty to use due care, a breach of such duty, and the breach as a proximate or legal cause of the resulting injury." *Steinle v. United States*, 17 F.4th 819, 822 (9th Cir. 2021) (citing *Vasilenko v. Grace Fam. Church*, 3 Cal. 5th 1077, 1083 (2017)). "Liability for negligence is not imposed for the failure to assist or protect another, absent some legal or special relationship between the parties giving rise to a duty to act." *Juarez v. Boy Scouts of America, Inc.*, 97 Cal. Rptr.2d 12, 35 (2000) (internal quotations omitted). "Generally, a greater degree of care is owed to children because of their lack of capacity to appreciate risks and avoid danger." *Id.* Consequently, California courts have frequently recognized special relationships between children and their adult caregivers that give rise to a duty to prevent harms. *Id.* at 35-36. "The measure of precaution which must be taken by one having a child in his care, who stands in no relation to the child except that he has undertaken to care for it, is that care which a prudent person would exercise under like circumstances." *Wallace*

1  *v. Der-Ohanian*, 199 Cal.App.2d 141 (1962). "Recognized special relationships include an operator of a preschool or daycare center to the children in attendance," *id.* (citing *Fowler v. Seaton*, 61 Cal.2d 681, 688 (1964), and a woman who "encouraged and invited" children to play on her premises and "encouraged the parents… to permit the children to come to her premises by telling them it would be perfectly safe for the girls" to be there without their parents. *Pamela L. v. Farmer*, 112 Cal.App.3d 206 (1980).

Here, the CBP Officers assumed a special relationship with 9-year-old J.A.M. and 14-year-old O.A.M. by undertaking to care for them during an extended detention that lasted 34 hours and 13-14 hours, respectively. Like the woman who "encouraged the parents … to permit the children to come to her premises by telling them it would be perfectly safe for the girls" to be there without their parents in *Pamela L.*, CBP's commitment that its officers will "treat minors with dignity, respect and special concern for their particular vulnerability," CBP Dir. No. 3340-030B at 7 § 8.4 (available online in redacted form at [CBP Directive No. 3340-030B.pdf](#)); that it will process minors as "quickly and expeditiously as operationally feasible," CBP Memorandum: Guidance on the Treatment of United States Citizen Minors Traveling Without Their Parent(s) or Legal Guardian(s) dated October 24, 2012, at 1 (available in redacted form at [CBP Issues Memo with Guidance on Treatment of U.S. Citizen Minors Traveling Without Their Parent(s) or Legal Guardian(s) (aila.org)](#)), and that it will allow notification to a parent or third-party of "any person administratively detained for more than 3 hours pending a determination of the person's admissibility," CBP Dir. No. 3340-030B at 15 § 9.11.3, encouraged parents to allow their unaccompanied U.S. Citizen children to cross the border for school or other purposes without fear of having their children be held incommunicado in a subterranean detention cell without just cause.

Accordingly, Defendant had a legal duty to use due care arising out the special relationship it assumed with J.A.M. and O.A.M. upon extending their detention, its officers breached that duty to use due care, and caused Plaintiffs' emotional harm.

**E.    The CBP Officers Intentional Interference by Threats, Intimidation, and Coercion with the Parent-Child Relationship of Mrs. Medina and Her**

**Children Violated Civil Code Section 52.1 (the Bane Act) and Article I, Section 1 of the California Constitution**

Parents have the right to raise their children without undue state interference under the California Constitution. *In re Marriage of Harris*, 112 Cal.Rptr.2d 127, 139 (2001). A parent's fundamental liberty interest is protected by the California Constitution, specifically, article I, section 1, which provides: "All people are by nature free and independent and have inalienable rights. Among those are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness and privacy." *Id.* California courts recognize parenting is a protected fundamental right under the California Constitution. *Id.*

**F.  Because the CBP Officers Did Not Engage in the "Permissible Exercise of Policy Discretion," the Discretionary Function Exception Does Not Immunize the United States from Liability**

The discretionary function exception to the waiver of sovereign immunity under the FTCA precludes claims against the United States which are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government , whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Whether a challenged action falls within the discretionary function exception requires a particularized analysis of the specific agency action challenged. *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002). The "United States bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity." *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

"In general, governmental conduct cannot be discretionary if it violates a legal mandate." *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000).

**1.  CBP Officers' 13 to 34 Hour Detentions of U.S. Citizen Minors Without Probable Cause Violated the Fourth Amendment**

Federal employees do not possess the discretion to violate constitutional rights. *Galvin v. Hay*, 374 F.3d 739, 757-58 (9th Cir. 2004) ("As federal officials do not possess discretion to violate constitutional rights, the discretionary function exception does not apply here.").

"It is well-established that a 'person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated.'" *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019) (quoting *United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005). "As a corollary of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." *Id.* "A reasonable officer would know that participation in an ongoing seizure after any probable cause had dissipated violates the Fourth Amendment." *Id.*; *Sialoi v. City of San Diego*, 823 F.3d 1223, 1227-28 (9th Cir. 2016).

Here, the 13-plus and 34-plus hours long detentions of minors O.A.M. and J.A.M. without reasonable suspicion beyond involuntary coerced false confessions after more than 8 hours of detention far exceed "lawful privilege" for a routine border search. Accordingly, the false imprisonment claim will be established.

### 2. CBP Officers' Coercive Interrogations of 9-Year-Old J.A.M. and 14-Year-Old O.A.M. While Preventing Their Mother From Being With Them Violated the Fifth Amendment Right to Substantive Due Process

It is well-established that a person subjected to coercive interrogation techniques can bring a substantive due process claim. *See Stoot v. City of Everett*, 582 F.3d 910, 928 (9th Cir. 2009); *see also Chavez v. Martinez*, 538 U.S. 760, 774 (2003) (plurality opinion). The substantive due process standard requires showing that an officer engaged in an 'abuse of power [that] shocks the conscience' and 'violates the decencies of civilized conduct.'" *Stoot*, 582 F.3d at 928 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The Supreme Court has described "police torture or other abuse" as a cognizable substantive due process claim. *Chavez*, 538 U.S. at 773-74. However, "police conduct need not include physical violence to violate substantive due process." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 431 (9th Cir. 2010). "[P]sychological coercion is sufficient." *Stoot*, 582 F.3d at 929; *see also U.S. v. Tingle*, 658 F.2d 1332, 1335-36 (9th Cir. 1981) (Unconstitutional interrogation techniques "does not consist only of express threats so direct as to bludgeon a defendant into failure of the will. Subtle psychological coercion suffices as well, and at times more effectively, to overbear a rational intellect and a free will")

(due process violation to extract confession through psychologically coercive interrogation tactic of threatening that suspect would not see her immediate family member "for a long time" if she did not cooperate); *accord United States v. McShane*, 462 F.2d 5 (9th.Cir. 1972) (psychological coercion generated by concern for a loved one could impair a suspect's capacity for self-control).

"It has also long been established that the constitutionality of interrogation techniques is judged by a higher standard when police interrogate a minor." *Crowe*, 608 F.3d at 431.

Here, the interrogation techniques used on 9-year-old J.A.M. and 14-year-old O.A.M. shock the conscience and violate the decencies of civilized conduct. Officer Lara and Officer Corrales each exploited the Children's vulnerability and concern for each other by threatening, implicitly and expressly to arrest the other Child if they refused to falsely confess. These officers and Officer Melendrez also deployed coercive promises of leniency if confessions were forthcoming. Further, the circumstances of the interrogations carried out intermittently over the course of at least eight hours, during which they were detained incommunicado from their mother, Mrs. Medina, in an underground detention facility for several hours. Finally, the duration of the detention without legal justification independently meets the "shock the conscience" standard.

### 3. Preventing Mrs. Medina from Being With Her U.S. Citizen Minor Children During Their Secondary Processing and Detention Violated Plaintiffs' First and Fifth Amendment Rights to Familial Association

"It is well established that a parent has a 'fundamental liberty interest' in 'the companionship and society of his or her child' and that '[t]he state's interference with that liberty interest without due process of law is remediable under [42 U.S.C. § 1983]." *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (quoting *Kelson v. City of Springfield*, 767 F.2d 651 (9th Cir. 1985). "[T]his constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents." *Id.* (quoting *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987)). Moreover, "the First Amendment protects those relationships, including family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively

personal aspects of one's life." *Id.* (quoting *Board of Dir. v. Rotary Club*, 481 U.S. 537, 545 (1987).

The *Lee* case arose out of the wrongful arrest, extradition, and incarceration of a mentally disabled man that would have been prevented "had defendants at any time compared [plaintiff's] fingerprints or other identifying characteristics with those of [the suspect], or had defendants in any other way verified the identity of the man they had in custody." *Id.* at 676-77. The Ninth Circuit held the plaintiff sufficiently alleged violations of the First and Fourteenth Amendments based on the "unwarranted interference" with the plaintiff's and his mother's right to familial association. *Id.* at 686.

Similarly here, the CBP Officers caused the unwarranted interference with J.A.M.'s and Mrs. Medina's right to familial association for several hours, which could have been prevented "had defendants at any time compared [J.A.M.'s] other identifying characteristics with those of [her passport photo], or had defendants in any other way verified the identity of the [J.A.M. while she was] in their custody." Further, they violated O.A.M.'s and Mrs. Medina's right to familial association for no just reason and in violation of their own policies.

**4. CBP's Own Policies Did Not Allow CBP Officers Any Discretion to Keep U.S. Citizen Minors Apart from Their Parents During Secondary Processing**

The discretionary function does **not** apply "if the acts complained of do not involve the permissible exercise of policy discretion." *Berkovitz v. United States*, 486 U.S. 531, 546 (1988). If the agency's "policy leaves no room for an official to exercise policy judgment in performing a given act, or if the act simply does not involve the exercise of such judgment, the discretionary function exemption does not bar a claim that the act was negligent or wrongful." *Id.* at 546-47, 108 S.Ct. 1954.

Here, the evidence at trial will establish that the CBP did not have discretion to keep O.A.M. and J.A.M. from being together with their mother, Mrs. Medina, while they were being processed at secondary inspection. Further, the CBP did not have discretion to prevent the Children from notifying Mrs. Medina of their delayed processing after 3-hours of detention.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs will request entry of judgment against Defendant on its FTCA Claims.

Respectfully submitted,

Dated:  February 26, 2024

*/s/ Joseph M. McMullen*
Joseph M. McMullen
Attorney Plaintiffs J.A.M., O.A.M., and Thelma Medina Navarr